*ORIGINAL*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES KEITT,

    Petitioner,

vs.                                          CA..A. No. 04-362E

UNITED STATES PAROLE COMMISSION,    Judge McLaughlin
DISTRICT OF COLUMBIA BOARD OF        Magistrate Judge Baxter
PAROLE,

    Respondents.
_____/

**PETITIONER'S REPLY TO RESPONSE TO PETITION
FOR WRIT OF HABEAS CORPUS**

    **NOW COMES,** Petitioner, James Keitt, in propria persona, and files his reply to the Respondent's "Response To Petition For Writ Of Habeas Corpus.

**I. INTRODUCTION**

    The Respondent contends that the petition should be denied for the following reasons: (1) it improperly names the U.S. Parole Commission as Respondent in this action as opposed to the warden of FCI McKean, the institution where he is current housed; (2) the claim that Petitioner has a due process right to an administrative appeal of parole is without merit because no liberty interest exist; (3) that the due process claim that the Commission relied on erroneous information in finding that Petitioner had violated the condition of parole by committing attempted murder is without merit because there is a rational basis for the Commission's finding and that it is in accordance with the what Respondent denotes as "[t]he Commission's guidelines for D.C. Code prisoners; (4) that the claim that the Commission violated the Ex Post Facto Clause of the Constitution when it applied the parole rules found at 28 C.F.R. § 2.70 est seq, in Petitioner's case is without

merit because under the **Allsion** [1] test there is no statistical evidence that the guidelines do not substantially circumscribe the Commission's discretion and that Petitioner cannot establish that he has been materially disadvantaged by the use of these guidelines; and (5) that Petitioner's double jeopardy claim is without merit because, contrary to his claim, the D.C. Parole Board no longer exist, rather the U.S. Parole Commission now controls the disposition of the extant detainer warrant. **Rsp. @ 4-12.**

Petitioner concedes that claim number 2, as enumerated above and claim 5, both lack merit. There is no due process right to an administrative appeal of parole, nor does the disposition of the pending detainer warrant originally lodged by the former D.C. Parole Board create a double jeopardy claim if executed by the successor, U.S. Parole Commission.

As for the remaining claims, 1, 3, and 4, Petitioner replies to each in seriatim.

### ARGUMENTS

#### A. Proper Party Respondent:

Respondent's contends that the U.S. Parole Commission should be dismissed from the case caption, and the warden of FCI McKean substituted as the proper respondent. **Rsp. @ 4.** Given the recent, ruling in **Rumsfeld v. Padilla**, 159 LEd.2d 513, 527-532 (2004), Petitioner agrees that Warden, James F. Sherman, not the United States Parole Commission, District Of Columbia Board Of Parole, is the proper respondent to this action. Although, Petitioner believes he can demonstrate an exception in his case to the immediate

---

1/ **Allston v. Gaines**, 158 F.Supp.2d 76, 82-83 (D.D.C. 2001).

custodian rule, because the substitution is not dispositive, he concedes to the substitution.

> B. Petitioner's Claim That The Commission Relied On Erroneous Information In Finding That He Had Violated The Conditions Of Parole By Committing Attempted Murder Is Not Without Merit:

As a threshold matter, the Respondent oversimplifies Petitioner's argument. Petitioner's claim is not solely based on the commission reliance on erroneous information derived from the Presentence Investigation Report (PSRP denoting that he "stabbed the victim in the head with a kitchen knife, while saying "I am going to kill you." See **Rspon @ p. 6; PSR @ p. 3.**[2] It includes the Commission's classification of this information as an attempt murder, an offense for which Petitioner was never charged.

Respondent relies heavily on the broad range of information the Commission may consider to assess the criminal behavior of a prisoner. **Rsp. @ 5.** The cases cited in support of this premise were informed by 18 U.S.C. § 4207, the former statute governing the information the Commission could consider, which is now repealed. See **18 U.S.C. § 4207.** Under the revised guidelines, 28 CFR § 2.80 (1999), the provision for determining the level of violence "involved in the "current offense" is the Point Assignment Table Category III of 2.80.

A current offense means any criminal behavior that is either: (1) Reflected in the offense of conviction or (ii) is not reflected but is found by the Commission to be related to the offense of conviction (i.e. part of the same course of conduct as the offense

---

2/  The Bureau of Prison policy no longer authorizes prisoners to have copies of their Presentence Investigation Report. They can only view the PSR in the presence of a counselor or case manager and cannot make copies.

--3--

of conviction). see § 2.80(6).

Point Assessment Table category III(B) governs the Commission's finding that the current offense involved attempt murder and states as follows:

> **(B). Current offense** involved attempt murder, conspiracy to murder, solicitation to murder, or any willful violence in which the victim survived despite death having been the most probable result at the time the offense was committed.

By application, this provision set forth the criteria that establishes the reasonableness of the Commission's determination that attempt murder was involved in the current offense. See **Gov't Ex. M @ p. 1.** At § 2.80(5) "attempts ... shall be scored by referenced to the substantive offense that was the object of the attempt ..., except that category III(A) shall apply only if death actually resulted." **28 CFR § 2.80(5) (2004).**

Under 18 U.S.C. § 1111, first degree murder is a killing committed with the requisite malice aforethought and the specific intent to commit an unlawful killing. See e.g. **United States v. Sands**, 968 F.2d 1058, 1064 (CA 10, 1992). A killing is committed with the requisite specific intent if it is "willful, deliberate, malicious, and premeditated." **18 U.S.C. § 1111(a).**

Viewing the record, in the light most favorable to the Respondent, fails to provide a rationale basis to support the Commission's conclusion that Petitioner attempted to murder the victim. The record states the following proofs:

> In 1997 the subject received a new 5-15 year term for Armed Robbery. The file indicates that the subject and his roomate robbed an 80 year old female victim. It reports that the subject attacked the victim from behind with a knife. The subject struck the victim once about the head with the knife cause a laceration. The subject pushed the victim to the floor began to

>    Choke her with his hands. The subject then stated
>    "mom, mom, I'm going to kill you."
>
>    The victim was able to escape by kicking the subject
>    in the groin and he released her. He then demanded
>    money from the victim and he forcibly took a small
>    pouch, which contained the victim's keys and currency.
>    He then left the home and fled the scene. The victim
>    suffered a laceration to the head and several scratches
>    to the neck. She was transported by ambulance to
>    hospital where she was treated and released.

(See Gov't Ex. M @ p. 1).

This account from the Commission Hearing Summary dated September 8, 2004, lacks veracity when compared with the account from the victim reported in the Presentence Sentence Investigation Report ("PSR"). See Gov't Ex. O @ p. 3. Nothing mentioned in the PSR indicates that Petitioner was with an accomplice. Id. In fact, the PSR describes Petitioner as the victim's roommate. Id. Further, the account of the PSR indicates that the alleged incident was preceded by a discussion between the victim and Petitioner about an empty beverage container he left on the kitchen table and that this discussion escalated to an argument. Id. These discrepancies are material to the element of Petitioner's intent to kill the victim and gives weight to Petitioner's claim that the information relied on by the Commission is inaccurate.

Although this Court's inquiry as to whether there is a rational basis in the record to support Commission's conclusion that Petitioner's current offense involved "attempted murder", generally does not involve directly weighing the evidence, See Gambino v. Morris, 134 F.3d 156, 161 (CA 3, 1998), "the Commission may not base its judgment as to parole on an inaccurate factual predicate." Gambino, 134 F.3d @ 162 (quoting Campbell v. United States Parole Comm'n, 704 F.2d 106, 109 (CA 3, 1993).

--5--

The Respondent apparently noticed the inconsistencies, as in its Response to this claim reference is made to the Pre-hearing Assessment, **Gov't Ex. K @ p. 1,** as opposed to the Hearing Summary, **Gov't Ex. M,** which constitutes the judgment in this matter. Again, the Hearing Summary is latent with the following errors: (1) That petitioner had an accomplice; (2) that his accomplice was his roommate; (3) that Petitioner cut the victim with a knife causing a head laceration; and (4) that Petitioner choked the victim. <u>Id</u> @ 1.

These discrepancies provide support to Petitioner's account of the incident, wherein he states as follows:

> He states that he was living at her home (i.e. the victim) after he got out of prison. He indicates that she wanted to have a boyfriend/ girlfriend relationship with him and he did not want this. He states that she was spurned when she offered her sexual advances and therefore she lied about this situation. He stated that she fell down while holding a knife and cutting him ham for lunch. He states he never hit her on the head. He indicates he took the knife from her and put it in his pocket when he left and then threw it into the yard. He denies ever making any threat to kill her. He denies taking her money.

**(Gov't Ex. M @ 2).**

Petitioner also indicates that he plead guilty to avoid being convicted of other related charges. This occurred the first day of trial after the proceedings were adjourned when the victim, Ms. Olamae Brown, became ill. **<u>See</u> James Keitt's Declaration.**[3] Petitioner's attorney informed him that in exchange for his guilty plea the prosecutor would dismiss the charge of assault with a deadly weapon with intent to do great bodily harm against a senior citizen. **<u>See</u> Decl.**

---

3/   Because Petitioner cannot properly access his PSR, his Declaration will present facts verifiable by that document.

--6--

The Commission's judgment relies on inaccurate information. Indeed, the victim was reportedly 80 years old at the time of the alleged offense. Petitioner reportedly approached her from behind with a knife, cut her with the knife about the head, then slammed her to the floor, where he commenced coking her. **Gov't Ex. M @ 1.** The Commission then contends that, in theory, Petitioner then intended to kill the victim; however, despite the knife he still possessed and the fact that he was choking the victim while stating, "I'm going to kill you", the 80 year old victim summoned the strength to kick him in his groin. **Id**. The report then states that Petitioner "released her," but still ".... demanded money from the victim and forcibly took a small pouch, which contained ... keys and currency." **Id**.

To conclude from this evidence that Petitioner intended to kill the victim requires a quantum leap. Even the 80 year old victim's condition suggest that the account the Commission relies on is inconsistent with what actually occurred. She was treated and released from the hospital.

At any rate, without weighing this evidence, this Court still must reject the Commission's judgment due to the inaccurate factual premise it used to conclude that Petitioner attempted to murder his victim. This conclusion is even inconsistent with the original charges filed by the prosecutor, i.e. "assault with a deadly weapon with intent to do great bodily harm against a senior citizen." **See** Decl. Accordingly, this case should be remanded to the Parole Commission with directions to conduct another Panel hearing within a set time and in a manner consistent with this Court's opinion. **Gambino**, supra. @ 165.

C.   Petitioner's Claim That The Commission Violated The Ex Post Facto Clause Of The Constitution When It Applied The Parole Rules Found At 28 C.F.R. § 2.70 et seq. In His Case Is Clearly Not Without Merit.

The Respondent contends that Petitioner's claim that the Commission use of the revised provisions of the parole guidelines violates the Ex Post Fact Clause of the Constitution lacks merits because, (1) The D.C. Circuit's precedent holds that the Commission's guidelines (1998 amendments) do not constitute laws for ex post facto purposes. **Allston v. Gaines**, 158 F.Supp. 2d 76, 82-83 (D.D.C. 2001). Respondent then attempts to reconcile this holding with the Third Circuit's contrary holding. See **Forman v. McCall**, 776 F.2d 1156, 1163 (CA 3, 1985), cer den, 476 U.S. 1119 (1986).

Without identifying the flaw in this premise, the Third Circuit's holding in **Mickens-Thomas v. Vaughn**, 321 F.3d 374, 383 (CA 3, 2003), clear rebuts the Respondent's proposition. In **Mickens-Thomas**, the Court held that the Ex Post Facto Caluse to the United States Constitution applies to a statutory or policy change that "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." Id. (citing **California v. Dept. of Corrections v. Morales**, 514 U.S. 499, 506, n.3; 115 S.Ct. 1597; 137 L.Ed.2d 588 (1995)). A new policy violates the ex post facto clause when, (1) it is retrospective, i.e. when it "[a]pplies to events occurring before its enactment," and (2) when it "disadvantage[s] the offender affected by it." Id. 383 (citing **Weaver v. Graham**, 450 U.S. 24, 29; 101 S.Ct. 960; 67 L.Ed.2d 17 (1981)); See also **Coady v. Vaughn**, 251 F.3d 480, 488 (CA 3, 2001). Essentially, the matter at issue "is not whether

the statute on its face pertains to parole decisionmaking, but whether, in practice, the new language has altered the fundament for reviewing parole applications." Mickens, supra. 321 F.3d @ 384(citing Garner v. Jones, 529 U.S. 244, 256 (2005)). The Third Circuit noted the reasoning of the Supreme Court, "[w]e look beyond the language of the statute and examine the Board's pronouncements of policy and its public statements that shed light on the interpretation of its statutory mandate." Mickens, supra. 321 F.3d @ 384.

  28 CFR § 2.80(4) and (5), provides a threshold comparison of the former D.C. guidelines to the current Commission guidelines. These provisions indicate, in pertinent part, "[f]or a prisoner whose initial hearing was held before August 5, 1998, the Commision shall render its decision by reference to the guidelines of the former D.C. Board of Parole in effect on August 4, 1998." **28 CFR § 2.80(4)**. This provision clearly indicates a distinction between the provisions of the former D.C. guidelines and the current Commission guidelines. This fact is supported by the next portion of this provisions, which states, "[h]owever, when a decision outside such guidelines has been made by the Board, or is ordered by the Commission, the Commission may determine the appropriateness and extent of the departure by <u>comparison</u> with the guidelines of § 2.80. The Commission may also correct any error in the calculation of the D.C. Board's guidelines." **Id (emphasis added)**.

  The fact that conflicts between the former determinations made by the D.C. Board using the D.C. guidelines, and current decisions reached by the Commission using the current guidelines, must be reconciled by comparing the former D.C. guidelines and

--9--

current guidelines to determine the **appropriateness** and **extent** of the departure, is informative. It indicates that where the former calculations are not erroneous and are more favorable to the prisoners, the Commission must yield to the former determination.

Similarly, 28 CFR § 2.80(5), provides:

> (5) Prisoner given initial hearings under the guidelines in effect from August 5, 1998 through December 3, 2005 (the guidelines formerly found in 28 CFR 2.80, Appendix to § 2.80 (2000)). For a prisoner given an initial hearing under the § 2.80 guidelines in effect from August 5, 1998, through December 3, 2000, the guidelines in paragraphs (b)-(n) of this section shall be applied retroactively subject to the provisions of paragraph (o) of this section. **(emphasis).**

Paragraph o provides conversion rules for retroactive application of the § 2.80 guidelines. **28 CFR § 2.80(o).** A fair reading of these conversion rules demonstrate that in practice the new policy and guidelines alter the fundament for reviewing parole in a manner detrimental to Petitioner.

Notwithstanding the aforementioned inaccuracies, the practice of the Commission in their application of Category III(B) to classify the acts related to the current offense as an attempt murder reflects an indifferent statutory mandate. Apparently, Congress decision to dissolve the D.C. Parole Board and transfer its functions to the U.S. Parole Commission by the Revitalization Act. **Public Law No. 105-33, § 11231(a)91), 111 Stat. 712, 745 (eff. Aug. 5, 1998).** Not only did congress curtail the District of Columbia's authority over parole supervision, it also stripped the D.C. Superior Court of its jurisdiction to review decisions regarding parole. See **Gant v. Reilly,** 224 F.Supp.2d 26 (D.D.C. **2002).**

These facts coupled with the practice of the Commission of disregarding Petitioner's clear showing that its decisions relies on inaccurate information certainly demonstrate a harsh, more detrimental fundament practiced by the Commission for reviewing parole applications. Accordingly, this violates the Ex Post Facto Clause. **Mickens, supra.** 321 F.3d @ 384; **Garner v. Jones, supra.**

## C O N C L U S I O N

**WHEREFORE,** for the reasons stated heretofore Petitioner request this honorable Court enter an order that the Commission's use of inaccurate information to determine its decision lacked a rational basis, thus was an abuse of discretion and/or that the Commission's failure to use the former D.C. parole Guidelines as opposed to the current guidelines violated the Ex Post Facto Clause. As a remedy, Petitioner submits that the Court should remand the case to the Commission with directions to conduct another panel hearing within a set time and in a manner consistent with this Court's opinion.

Date: 8/1/05

James Keitt 05240-016
Petitioner/Pro-se
FCI McKean
P.O. Box 8000
Bradford, PA 16701

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the date listed below, a true and correct copy of the foregoing document was conveyed to prison authorities for mailing with first class U.S. postage prepaid and properly addressed to the following party:

Christy C. Wegand
Assistant U.S. Attorney
Western District of PA
U.S. Courthouse and Post Office
700 Grant Street, Suite 400
Pittsburgh, PA. 15219


Date: August 2, 2005

*James Keitt*
James Keitt #05240-016
Petitioner/Pro-se
FCI McKean
P.O. Box 8000
Bradford, PA 16701

August 2, 2005

James Keitt #05240-016
FCI McKean
P.O. Box 8000
Bradford, PA 16701

United States District Court
Western District of Pennsylvania
Office of the Clerk
17 South Park Row, Rooom A 280
Erie, PA 16501

Re:  **JAMES KEITT v. U.S. PAROLE COMMISSION:**
     **CA No. 04-362E**
     Judge McLaughlin
     Mag. Judge Baxter


Dear Clerk:

    Enclosed for filing please find the original and one copy of Petitioner's Reply To Response To Petition For Writ Of Haebas Corpus, with attachments and Certificate of Service.


Sincerely,


*James Keitt*

cc: file
   : jc
   : enclosure